FILED ENTERED
LOGGED RECEIVED
APR 2 9 2011
AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GARY SEAN CLAYTON** | * |
| Petitioner | * |
| | * Civil No. PJM 10-2507 |
| v. | * Crim. No. PJM 09-0526 |
| **UNITED STATES OF AMERICA** | * |
| Respondent | * |

## MEMORANDUM OPINION

Gary Sean Clayton, *pro se*, has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Document No. 46]. Having considered the Motion and the Government's Opposition thereto, the Court **DENIES** it.

### I.

On September 18, 2009, a criminal complaint was filed against Clayton, a resident of Frisco, Texas, alleging one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. In it, the Government alleged that Clayton, one of several owners of a medical staffing company headquartered in Texas, had defrauded Holy Cross Hospital in Silver Spring, Maryland, by submitting invoices for work that had never been performed.

Clayton pled guilty to the charge in this Court on October 8, 2009. The Court found that the plea was knowing and voluntary, and that there were sufficient facts to prove him guilty as charged. After Clayton's plea, other owners and clients of the staffing company, along with the Government, attempted to determine the extent of Clayton's fraud. They discovered that, after the plea, Clayton attempted to persuade Washington Hospital Center ("WHC"), a client of the staffing company, and its partner company, Goodman Factors, that no overbilling had occurred

on WHC's account; he did so by using a forged affidavit from a former hospital employee stating that all the billing had been done appropriately.

The Government then moved to have Clayton taken into custody, arguing that the forged affidavit constituted a violation of the condition of release requiring that he not commit any violation of federal, state, or local law. At the revocation hearing, the Court gave Clayton a choice between detention and a halfway house. Clayton initially chose detention but fourteen days later filed a Motion to Modify the Conditions of Release, requesting transfer to a halfway house. The Court granted the request and Clayton thereafter spent approximately four months at a halfway house in Washington, DC, before sentencing.

At the sentencing hearing held on May 25, 2010, the Court found that the creation of the forged affidavit merited an obstruction of justice enhancement of two points pursuant to U.S.S.G. § 3C1.1. In addition, for the same reason, the Court determined that Clayton should only receive a two-point reduction for acceptance of responsibility rather than a three-point reduction. Clayton was then sentenced to forty-six months in prison and thirty-six months of supervised release with conditions. He was ordered to pay restitution to Holy Cross Hospital in the amount of $472,073.19, as well as an additional $180,175 in restitution to Goodman Factors.

Clayton did not appeal his sentence. He has now filed the instant Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

## II.

In his Motion, Clayton makes four separate arguments: (1) There was no ground for the obstruction of justice enhancement because he did not intend to impede justice; (2) He received ineffective assistance of counsel; (3) He is entitled to receive credit for the four months served at the halfway house; and (4) He merits the additional one-point credit for accepting responsibility,

as well as a two-level reduction for providing assistance to the Government in another case that led to a felony conviction.

### III.

#### A.

Clayton first argues that since he did not intend to impede justice, the Court had no basis to apply an obstruction of justice enhancement at sentencing. The Court disagrees.

The United States Sentencing Guidelines § 3C1.1 regarding obstruction of justice refers to any defendant who "willfully obstructed or impeded . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" where the defendant's actions related to "the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. Application Note 4(c) to section 3C1.1 gives as an example the production of "a false, altered, or counterfeit document or record during an official investigation or judicial proceeding." *Id.*

Clayton admits that he created and forged the post-plea affidavit, and even went so far as to obtain a shipping envelope and label to give it an appearance of legitimacy. The fabricated affidavit constituted a false document or record as outlined in Application Note 4(c) to the U.S. Sentencing Guidelines § 3C1.1, and related to the Government's investigation of Clayton's fraud. Accordingly, the Court properly applied the obstruction of justice enhancement to Clayton's sentence.

#### B.

Clayton's second argument is that he received ineffective assistance of counsel. The right to effective assistance of counsel in criminal prosecutions is protected by the Sixth Amendment, which is designed to ensure that pleas as well as trials have reliable outcomes.

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-pronged test requiring that a convicted defendant show first that the counsel's performance was deficient and then that the errors deprived the defendant of a fair trial with a reliable result. *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." *Id. See also Powell v. Kelly*, 562 F.3d 656 (4th Cir. 2009) (relying on *Strickland*).

Under the first prong of the test, the defendant must show that counsel's assistance was deficient. *Strickland*, 466 U.S. at 687. Deficient conduct is conduct that is unreasonable and detracts from the fairness and reliability of the trial guaranteed by the Sixth Amendment. *Id.* at 689. Since there is no objective standard for determining whether a counsel's performance is reasonable under the Constitutional requirement, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case . . . " *Id.* at 688-90. Attorneys often must make strategic decisions in defending their clients, but a defendant cannot successfully challenge the effectiveness of assistance if those strategic decisions were "made after thorough investigation of law and facts relevant to plausible options . . . " *Id.* at 690. "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Id.* at 682 (paraphrasing the court of appeals' decision that also explored a reasonableness standard for counsel's decisions).

The second prong of the test requires that the defendant show that counsel's errors or deficiencies "actually had an adverse effect on the defense." *Id.* at 693. That is, the Sixth

Amendment guarantee of effective assistance of counsel means that the defendant can "justify reliance on the outcome of the proceeding." *Id.* at 692. The burden is on the defendant claiming ineffective assistance of counsel to show that there was a reasonable probability the result of the trial would have been different had counsel not committed the alleged errors or omissions. *Id.* at 694. A court hearing an ineffective assistance claim looks at the evidence in the record to assess the validity of the claim; "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making a prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 695-96.

Clayton contends that his attorney's advice not to challenge the additional restitution of $180,175 to Goodman Factors was unreasonable and constitutes ineffective assistance. However, counsel's decision appears to have been well-founded in light of the facts of this case. Clayton asserts in his Reply "that being an owner of the company . . . it could be foreseeable that I be held accountable for *any* losses associated with the company. I did agree to this but not that I defrauded the hospital." (Emphasis supplied.) This statement clearly suggests that Clayton in fact reviewed the possibility of a restitutionary obligation with his attorney. Thus, counsel's advice not to challenge the increase in restitution was a reasonable decision, and Clayton has not shown any reason to regard it otherwise. But even if the advice were considered unreasonable under the first prong of *Strickland*, Clayton has not shown a reasonable probability that the results of the sentencing hearing would have been different, as required by *Strickland's* second prong. They would not have been.

Clayton's next contention is that counsel erred in not challenging the obstruction of justice enhancement. This claim also fails the first prong of the *Strickland* test, because his

attorney in fact did challenge the enhancement in Defendant's Sentencing Memorandum submitted on April 30, 2010, prior to the sentencing hearing. In this respect, counsel did not fail to do what Clayton says he failed to do. End of inquiry.

Last, Clayton's asserts that his counsel delayed in notifying the Government of the forged affidavit until it was discovered through a third party, a delay which caused the Government to request the obstruction of justice enhancement. It is not clear that counsel even knew of the forgery or whether knowing of it, he left it for the Government to discover, which it might or might not do. But even if counsel's delay could fulfill the first prong of the *Strickland* test, by no means does it pass the second prong. Regardless of the time between when Clayton may have told his attorney of the affidavit and when the Government discovered it, Clayton's forgery had already been consummated and his action already amounted to an obstruction of justice. In other words, had counsel notified the Government immediately – assuming he knew of the forgery – it would not have shortened Clayton's sentence in any way.

### C.

Clayton next argues that he is entitled to receive credit for the four months he spent at the halfway house in Washington, DC, upon revocation of his pre-sentencing release. He makes this claim pursuant to 18 U.S.C. § 3585(b), which provides that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence."

"[T]he phrase 'official detention' in § 3585(b) refers to a court order detaining a defendant and committing him to the custody of the Attorney General for confinement." *Reno v. Koray*, 515 U.S. 50, 56 (1995). The Supreme Court has distinguished between pre-trial detention and release as: "a defendant suffers 'detention' only when committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions . . . is 'released.'" *Id.* at 57. *See also United States v. Woods*, 888 F.2d 653, 655 (10th Cir. 1989) ("For the purpose of calculating credit for time served under 18 U.S.C. § 3585, 'official detention' means imprisonment in a place of confinement, not stipulations or conditions imposed upon a person not subject to full physical incarceration"). For example, the defendant in *Reno* was housed at a community treatment center and was not authorized to leave the premises; even so, the Supreme Court found his circumstances to fall short of official detention, because he was not subject to the control of the Bureau of Prisons. *Reno*, 515 U.S. at 62-63.

If a defendant's pre-sentence conditions meet the definition of official detention, then he or she is eligible for credit for time served under 18 U.S.C. § 3585(b). However, a district court does not have the authority to determine credit at sentencing. *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress has indicated that computation of the credit must occur after the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing"). *See also United States v. Soles*, 336 Fed. App'x 287 (4th Cir. 2009). In order to receive credit for time served prior to sentencing, a defendant must make the request to the Attorney General via the Bureau of Prisons. *United States v. Johnson*, 418 F.3d 879, 880-81 (8th Cir. 2005) ("[A]ny request for any such credit must be addressed to the Bureau of Prisons in the first instance"). *See also Burgos v. Thompson*, 879 F. Supp. 37, 38 (N.D.W. Va. 1995) ("The appropriate credit for time spent in official detention is to be computed by the Attorney General

after a federal criminal defendant has begun to serve his sentence"); *Woods*, 888 F.2d at 654 ("The Attorney General has the initial discretion to credit a prison term with time spent in custody prior to commencement of sentence").

Clayton was committed to custody of the Attorney General for detention on December 15, 2009. He spent a brief time at the Correctional Treatment Facility in Washington, DC, before the Court granted his request to be transferred to a halfway house on January 6, 2010. Clayton then spent approximately four months at the halfway house in Washington, DC, before sentencing on May 25, 2010.

Upon moving to the halfway house, Clayton was no longer in official detention and was instead on release with conditions. There were restrictions on his actions but he was not fully incarcerated given that, for example, he was able to leave the halfway house daily to go to work. Therefore, Clayton may only request credit for the time spent in detention at the Correctional Treatment Facility. Further, as set out in *Thompson*, *Burgos*, and *Woods*, Clayton must petition the Bureau of Prisons for this credit, and not the Court.

### D.

Clayton's final argument is his request for a one-point credit for accepting responsibility and a two-level reduction for providing assistance to the Government in a case that resulted in a felony conviction. Title 18 of U.S. Code § 3553 gives the court the authority to reduce a sentence below a minimum level established by statute *upon motion of the Government*. 18 U.S.C. § 3553 (emphasis added). The Government must ask the Court to reduce the defendant's sentence before the Court can use the authority given in § 3553. In this case, the Government declined to make such a motion, and the sentence reflected the reductions recommended in the pre-sentencing report. Clayton has no remedy available in this regard.

## IV.

Rule 11(a) of the Rules Governing § 2255 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court has considered the record and finds that Clayton has not made the requisite showing here. Accordingly, the Court denies a certificate of appealability.

## V.

For the foregoing reasons, Clayton's Motion to Vacate, Set Aside, or Correct Sentence [Document No. 46] is **DENIED**.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

April 28, 2011